UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11507-RGS

JUCELIA DE SOUZA NETO

v.

YOLANDA SMITH and
STEVEN W. TOMPKINS[1]

MEMORANDUM AND ORDER
ON THE GOVERNMENT'S MOTION TO DISMISS

September 27, 2017

STEARNS, D.J.

The issue in this case is straightforward: Does an unreviewable reinstated removal order, held in abeyance pending a withholding-only proceeding, constitute an "administratively final" order authorizing the detention of an alien under 8 U.S.C. § 1231(a)?[2] The facts underlying Jucelia de Souza Neto's habeas corpus petition are not in dispute. De Souza Neto, a Brazilian national, entered the United States illegally in December of 2004. She was apprehended by Border Patrol agents and required to appear before

---

[1] Respondent Smith is the superintendent of the Suffolk County House of Correction, where petitioner is currently detained. Respondent Tompkins is the sheriff of Suffolk County.

[2] This appears to be a matter of first impression in the First Circuit.

an Immigration Judge (IJ) in Harlington, Texas.  When she failed to appear as instructed at the February of 2005 hearing, an order for her removal was issued in abstentia.  In 2007, after de Souza Neto was arrested and charged with prostitution and possession of marijuana (charges that were later dismissed), Immigration and Custom Enforcement (ICE) detained her and deported her from the United States.

A few weeks later, de Souza Neto unlawfully re-entered the United States and took up residence in Massachusetts.  In March of 2017, de Souza Neto was arrested for driving with a suspended license and for refusing to provide identification (these charges were also subsequently dismissed). ICE took custody of de Souza Neto on April 5, 2017, and served her with a Notice of Intent to reinstate the 2005 removal order.

On June 1, 2017, while in custody, de Souza Neto was interviewed by an asylum officer after she expressed a fear of returning to Brazil.  The asylum officer determined that de Souza Neto reasonably feared being killed by members of a drug gang that had targeted her family and murdered her brother and uncle.  De Souza Neto was then granted a hearing before an IJ on September 13, 2017, to determine whether she is eligible for withholding of removal to Brazil.   There being no information from the parties to the contrary, the court will assume that the withholding hearing has been

2

concluded. De Souza Neto's counsel states that the IJ's decision on withholding may take several months to issue.

On June 29, 2017, after the meeting with the asylum officer, de Souza Neto requested a custody hearing. The IJ ruled that the Immigration Court does not have jurisdiction to conduct a bond hearing for detainees in withholding-only proceedings. De Souza Neto appealed that decision to the Bureau of Immigration Appeals (BIA). That appeal remains pending.

By way of introduction to the statutory framework, 8 U.S.C. § 1226(a) governs the detention of an alien "pending a decision on whether the alien is to be removed from the United States." Section 1226(a) and its attendant regulations permit the release of a qualifying alien subject to a bond and conditions. If an alien illegally returns to the United States after departing (voluntarily or involuntarily) under an order of removal, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). Section 1231(a)(2) mandates that "the Attorney General shall detain the alien" for 90 days (the so-called "removal period") to effectuate the removal order. Section 1231(a)(1)(B) defines the "removal period" to begin on the latest of three

3

discrete events. The only relevant event here is "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(b)(3)(A) further provides that "[n]otwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Consistent with this provision, an alien may be eligible for withholding of removal to a specific country if the alien is determined to have a reasonable fear of persecution under 8 C.F.R. § 208.31. The alien may, however, be removed to an available third country. *See* 8 U.S.C. § 1231(b)(1)(C).

Relying on a Second Circuit opinion, *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), de Souza Neto argues that because the decision whether she will be physically removed from the United States has not been finally made in the withholding proceeding, she falls under the bond determination provisions of 8 U.S.C. § 1226(a). In this regard, the Second Circuit reasoned that, since the language of § 1226(a) broadly refers to "a decision . . . to be removed," it is not limited to the pendency of a removal proceeding brought pursuant to 8 U.S.C. § 1229(a).

> The statute does not speak to the case of whether the alien is theoretically removable but rather to whether the alien will

4

actually be removed. An alien subject to a reinstated removal order is clearly removable, but the purpose of withholding-only proceedings is to determine precisely whether "the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

*Guerra*, 831 F.3d at 62.

The government, for its part, relies on a more recent Ninth Circuit decision, *Padilla-Ramirez v. Bible*, 862 F.3d 881 (9th Cir. 2017). The Ninth Circuit holds, and this court agrees, that a reinstated removal order is "administratively final" and authorizes removal detention under 8 U.S.C. § 1231(a) independent of any withholding proceeding.

> First, a removal order undoubtedly is administratively final when it first is executed; if it is reinstated from its original date, it stands to reason that it retains the same administrative finality because section 1231(a)(5) proscribes any challenge that might affect that status. Second, the reinstatement provision is located in the same section of the Act, tellingly entitled "Detention and removal of aliens *ordered removed*," *id.* § 1231 (emphasis added), as the detention authority that the government claims in this case. This placement suggests that Congress meant for the detention of aliens subject to reinstated removal orders to be governed by that section, which would require that such orders be administratively final. The fact that the reinstatement provision appears among section 1231(a)'s detention and supervision provisions further bolsters this inference. *Id.* § 1231(a)(2)-(3),(6).

*Padilla-Ramirez*, 862 F.3d at 885. That a removal order may not be executed until the conclusion of the withholding proceeding has no impact on its finality.

5

> Withholding-only proceedings do not, however, purport to override section 1231(a)(5)'s prohibition on reopening or reviewing a reinstated order. . . . At most, a grant of withholding will only inhibit the order's execution with respect to a particular country. Even if [petitioner] were to prevail on his application, he still would be subject to removal pursuant to the reinstated order – the government simply would have to seek an alternate country to receive him.

*Id.* at 886.

De Souza Neto counters that a withholding determination, for all intents and purposes, is a decision on whether she may be removed from the United States *at all*. She points out that the reinstated removal order does not designate a country of removal other than Brazil. While the statute in theory permits removal to a third country, "[i]n practice, however, non-citizens who are granted restrictions on removal are almost never removed from the U.S." *Kumarasamy v. Att'y Gen. of U.S.*, 453 F.3d 169, 171 n.1 (3d Cir. 2006), *as amended* (Aug. 4, 2006), *quoting* Weissbrodt, David & Laura Danielson, *Immigration Law and Procedure* 303 (5th ed. 2005).

The *Padilla-Ramirez* Court answered this contention by way of an analogy to *Zadvydas v. Davis*, 533 U.S. 678 (2001).

> There, an alien (Zadvydas) had been ordered removed and was detained pursuant to section 1231(a). *See id.* at 683-684. As it turned out, none of the available countries of removal were willing to accept him. *Id.* at 684. Zadvydas then challenged his continuing detention, which appeared at that point to be potentially permanent. *Id.* at 684-685. The Supreme Court, relying on the canon of constitutional avoidance, held that the

6

> government's detention authority under section 1231(a) terminates "once removal is no longer reasonably foreseeable." *Id.* at 699. But even in such a circumstance, section 1231(a) still controls: although the government cannot detain the alien, the alien is subject to supervision under section 1231(a)(3). *See id.* at 696.
>
> Like Zadvydas, [petitioner] is subject to an order of removal that is, by all appearances, administratively final. Like Zadvydas, the only obstacles to petitioner's removal from the United States are potential individualized determinations that he cannot be removed to specific countries. . . . [T]he touchstone of section 1226 is the nature of the decision to be made, . . . and the decision to be made in this case is the same as in *Zadvydas*: whether [petitioner]'s removal order may be executed with respect to particular countries. The fact that Zadvydas was detained pursuant to section 1231(a) even while the government cycled through the list of possible removal countries indicates that such country-specific determinations are not "decision[s] on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Accordingly, section 1226(a) has no application here.

*Padilla-Ramirez*, 862 F.3d at 886-887.

De Souza Neto's remaining argument, that she should be released under *Zadvydas* because her removal is not reasonably foreseeable, is prematurely made. The Supreme Court in *Zadvydas* fixed a presumptively reasonable removal detention duration of six months. 533 U.S. at 700-701. Petitioner's detention does not yet exceed six months. In addition, seeking withholding relief may well constitute an "act[] to prevent the alien's removal subject to an order of removal" that operates to extend the removal period. 8

7

U.S.C. § 1231(a)(1)(C). See *Rodriguez-Guardado v. Smith*, 2017 WL 4225626, at *2 (D. Mass. Sept. 22, 2017).

## ORDER

For the foregoing reasons, the government's motion to dismiss is ALLOWED. The Clerk will enter the order of dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE